THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD BUTLER, Defendant-Appellant.

(No. 72-198;

Fifth District—August 14, 1975.

EBERSPACHER, J., dissenting.

Robert E. Farrell and Richard E. Cunningham, both of State Appellate Defender's Office, of Mt. Vernon (Kelly B. Hardwick and Bert Gates, Research Assistants), for appellant.

Robert H. Rice, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

The defendant, Richard Butler, was convicted of the crime of armed robbery of Max Wilson and also of the crime of armed robbery of Lloyd Hall and was sentenced to two concurrent terms of not less than 8 nor more than 15 years in the penitentiary.

The alleged robbery occurred early in the morning of May 15, 1971, in

East St. Louis. The two victims, Max Wilson and Lloyd Hall, were mechanics at a St. Louis service station. After finishing work by 11 p.m. on May 14, they went to their homes in St. Louis County to change clothes and then headed toward East St. Louis in Wilson's small foreign sports car. They said they had heard of a tavern with a mixed crowd and that they could pick up girls there.

They drove to Illinois, getting off Interstate Highway 70 in South East St. Louis shortly after midnight. Wilson testified that he had never taken that particular exit before and they got lost. They made their way to Fifteenth Street and Bond Avenue where they observed two boys standing on the corner. Wilson in his statement to the police had said that he saw a group of Negro males. At the trial he defined "group" as more than one. Wilson and Hall called out, asking directions, but when the boys could not hear, Hall turned the car around and drove up to the corner where the boys were standing.

The corner was brightly lit by a mercury light. Wilson and Hall testified that the defendant pulled out a steak knife and demanded money, and the other boy, Smith, drew a revolver. Both witnesses were able to identify a knife and a gun admitted into evidence as those used by their assailants. Wilson said Smith appeared to be in charge. Wilson and Hall testified that the robbery took between 10 and 20 minutes. They testified that the defendant robbed only Wilson and Smith, alone, robbed Hall. They said that they stood about an arm's length from the defendant during the time and that the defendant did not wear any disguise. Both witnesses identified the defendant as one of their robbers. They testified he was wearing gray trousers and a maroon or purple shirt jacket. One of the officers who later interviewed the defendant said that the defendant wore dark trousers and a reddish-brown jacket-type shirt. After their money was taken, Wilson and Hall were told to get out of the area.

They drove a couple of blocks and found a police car. Wilson estimated this took about 2 minutes. They told the officers what had occurred and described their assailants. The police told them to follow in their car and they returned to the corner where the robbery occurred. Butler and Smith were standing on the corner and when the police pulled up, Smith began to run. Butler did not run. Officer Burgess immediately got out of the car with his gun drawn. It is not exactly clear when Butler and Smith saw the police, when Smith ran, and how quickly Burgess got out of the car. Officer Burgess arrested Butler and Officer Jeremias chased and subsequently shot and killed Smith. A revolver was found near Smith and a steak knife was discovered in the defendant's pocket. The defendant had a dollar bill and 70 cents in change.

One dollar and nine cents was found on Smith. The money taken from Wilson and Hall was never recovered.

Appellant contends that the State failed to prove his guilt beyond a reasonable doubt, that he was prejudiced by the admission of the flight of Smith into evidence, and that he was also prejudiced by improper and inflammatory closing arguments of the State. After studying the record, we conclude that none of the above contentions have merit.

The appellant also argues that the trial court erred in imposing two concurrent sentences for offenses arising from the same conduct. We agree.

In *People v. Williams,* 60 Ill.2d 1, 322 N.E.2d 819, the court said at pages 13-14:

"Beginning with *People v. Schlenger* (1958), 13 Ill.2d 63, this court has decided a series of cases culminating in holdings that a person may not be convicted of multiple offenses arising out of the same act or the same conduct and that only the judgment and sentence of the most serious of the offenses may stand. (See also *People v. Duszkewycz* (1963), 27 Ill.2d 257; *People v. Stewart* (1970), 52 Ill.2d 310; *People v. Whittington* (1970), 46 Ill.2d 405; *People v. Lerch* (1972), 52 Ill.2d 78; *People v. Prim* (1972), 53 Ill.2d 62; *People v. Cox* (1972), 53 Ill.2d 101; *People v. Lilly* (1974), 56 Ill.2d 493; *People v. Scott* (1974), 57 Ill.2d 353.)"

■■ In the present case it is clear that the two armed robberies arose from but one alleged course of conduct stemming from one intent or motivation. Defendant at the time of the commission of the crime had one intent and that was to commit armed robbery. This intent was carried out by his committing the crime of armed robbery. The victim's testimony that each robber actually took money from only one victim does not constitute a substantial change in the nature of the criminal objective. Neither does charging the defendant both as a principal and as an accomplice change the criminal objective. Under these circumstances, only the conviction of the defendant for the crime of robbing Max Wilson may stand. The judgment and sentence for robbing Lloyd Hall must be reversed. In so holding we believe our decision is in conformance with the rationale of *People v. Williams.*

■■ The defendant's final contention is that the sentence imposed was excessive. The defendant was 17 years of age at the time of the commission of this crime, had an extensive juvenile record and was on parole from the Illinois Youth Commission. However, he had no felony convictions. It appears that the severity of the sentence imposed by the trial court may have been motivated by the trial judge's belief that the de-

fendant was guilty of the commission of two separate crimes and punishable for both.

Accordingly, we affirm the judgment of defendant's conviction on the charge of the armed robbery of Max Wilson and remand for resentencing. We reverse the judgment of defendant's conviction and the sentence for the armed robbery of Lloyd Hall.

Affirmed in part, reversed in part and remanded.

CARTER, J., concurs.

Mr. JUSTICE EBERSPACHER, dissenting:

I believe defendant's conviction for the armed robbery of Lloyd Hall should also be affirmed. I fail to find any distinction between the factual situation in this case and *People v. Prim*, 53 Ill.2d 62, 289 N.E.2d 601, a case which is ignored by the majority. Prim likewise "had one interest and that was to commit armed robbery." Here separate criminal acts were involved; defendant intimidated the victims with a knife and Smith intimidated with a revolver. As in *Prim* each robber actually took money from only one victim. I find nothing in *People v. Williams*, 60 Ill.2d 1, 322 N.E.2d 819, which overrules *Prim*, nor do I agree that the rationale of *Williams* requires the result reached in this case.