THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v* GEORGE MORGAN, Defendant-Appellant.

First District (5th Division)   No. 81—1010

Opinion filed March 31, 1983.

Steven Clark and Susan Kaplan, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Richard B. Levy, and Stephen Erhard Eberhardt, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MEJDA delivered the opinion of the court:

Defendant George Morgan was convicted in a bench trial of armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2) and was sentenced to a term of 10 years' imprisonment. On appeal, he contends that: (1) his warrantless nonconsensual arrest at his home was illegal because it was not based on probable cause and was not justified by exigent circumstances; and (2) the trial court erred in admitting evidence of another crime allegedly committed by him.

For the reasons hereinafter set forth, we affirm the judgment of

the circuit court.

Defendant has not contended that his guilt was not established beyond a reasonable doubt and, therefore, a full summary of the facts is not provided. Facts necessary to our determination of the issues raised are as follows.

On February 8, 1979, after a week-long investigation, Chicago police officers had assembled information linking defendant to four armed robberies which had occurred during the previous 10-day period at premises located within a short distance of one another. These were the 404 Club, the Busy Corner Pharmacy (subject of the instant case), the Glass House Lounge and the 449 Food and Liquor Store. At about 12:45 p.m. on that date, three officers went to defendant's apartment, intending to arrest him. They had not obtained a warrant. Earlier in the day, one of the arresting officers had interviewed Doris Yarbor, a witness to the 404 Club robbery. She had identified defendant's photograph that morning at the police station and had showed this officer the defendant's name and I.R. number written upon a piece of paper. None of the arresting officers, however, were present at the photographic identification, and none attempted to verify the information regarding her identification of defendant. One officer testified that he did not believe it was necessary to verify the information because he believed the only way she could have gotten an I.R. number was from the mug book. Prior to the arrest, the officers had also obtained a general physical description of the defendant.

The officers went to the door of the building where defendant resided and were admitted by Charles Kelly, defendant's brother-in-law. This building was a "family type" building. Kelly, his mother, and brother lived in the first-floor apartment. Kelly's sister-in-law, defendant, and two children lived in the second-floor apartment, and on the third floor lived additional members of Kelly's family. There was testimony that all the residents of the building had access to all areas of the building, that doors on all three floors were kept open or unlocked, and that access to all apartments by each occupant was not restricted.

The officers identified themselves to Kelly, himself a Chicago police officer,[1] and told him they were there to arrest George Morgan. Kelly then led the police officers upstairs to the doorway of the apartment where defendant resided. He knocked on the door and it came open. He went into the apartment and told defendant the police

---

[1]No question is raised by defendant regarding Kelly's status as a police officer, and consequently we do not reach it.

wanted to talk to him about an armed robbery. The defendant came to the open doorway of the apartment and spoke to the police. While defendant was standing in the doorway, an officer told him he was under arrest. The apartment was not searched. The officers entered the apartment to accompany defendant while he changed from his pajamas into other clothes. They then took him to the police station where he was placed in a lineup. There he was identified by the victim of the Busy Corner Pharmacy armed robbery, giving rise to the instant case, and he also was identified by Osama Rasik, the victim of the robbery at the 449 Food and Liquor Store. Evidence of the latter armed robbery was admitted into evidence in the instant trial and was the subject of defendant's motion *in limine.*

Prior to trial, defendant moved to quash his arrest. The trial court ruled that the arrest was legal, that the stairway was a common area, that there was probable cause to arrest defendant for the 404 Club robbery, that there were exigent circumstances and that entry into the house was consensual.

OPINION

Defendant first contends that his warrantless home arrest was illegal because it was not based on probable cause and was not justified by exigent circumstances. The State argues that defendant has waived this issue on appeal by failing to mention it in a written motion for a new trial.

■■ The established rule is that failure to specify alleged errors in a motion for a new trial constitutes a waiver of those issues and that such issues cannot be urged as grounds for reversal on review. (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739; *People v. Ortiz* (1980), 91 Ill. App. 3d 466, 414 N.E.2d 1072.) Although Supreme Court Rule 615(a) (73 Ill. 2d R. 615(a)) provides for an exception to the general waiver rule, for such an exception to apply it must be plainly apparent from the record that an error affecting substantial rights was committed. (*Jackson; People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6.) Also, in applying the plain error exception, it is relevant to examine the evidence to determine if it is so closely balanced that an innocent person may have been convicted due to an obvious error of record. *Jackson; People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

Defendant here has not contended that the evidence is insufficient to establish his guilt beyond a reasonable doubt, and we do not regard the evidence in this case as "closely balanced." An eyewitness to the Busy Corner Pharmacy armed robbery positively identified the

defendant as the perpetrator of that crime. Also, defendant's identity was corroborated and his alibi defense directly contradicted by testimony of a witness to the 449 Food and Liquor Store armed robbery occurring only minutes later. Moreover, the waiver rule is appropriate since the circumstances of defendant's warrantless arrest are not such as to demonstrate error affecting his substantial rights.

■ Regarding defendant's probable cause issue, the information obtained by the arresting officers, *e.g.,* that defendant has been identified in a photograph by an ordinary citizen, that this person had obtained an I.R. number and name of defendant, and the general physical description of the offender which was obtained from other sources, although circumstantial, taken together were enough to support the trial court's determination that the arresting officers had knowledge sufficient to warrant a man of reasonable caution to believe that an offense had been committed and that the person arrested had committed the offense. (See generally *Beck v. Ohio* (1964), 379 U.S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223; *People v. Lippert* (1982), 89 Ill. 2d 171, 432 N.E.2d 605.) Thus, the record contains evidence sufficient to sustain the trial court's finding of probable cause in the hands of the arresting officers.

Briefly addressing defendant's contention that his arrest was illegal under *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, we note that the testimony established that defendant was arrested in his open doorway after consenting to meet there with the arresting officers. As a general rule, a person standing in the open doorway of his or her house is deemed to be in a "public place" for purposes of the fourth amendment. (*United States v. Santana* (1976), 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406; *United States v. Botero* (9th Cir. 1978), 589 F.2d 430, *cert. denied* (1979), 441 U.S. 944, 60 L. Ed. 2d 1045, 99 S. Ct. 2162; accord, *Finch v. State* (Okla. Crim. 1982), 644 P.2d 1378; see also *People v. Lindner* (1980), 81 Ill. App. 3d 15, 400 N.E.2d 1092.) In *Santana* the Supreme Court held that a defendant has no reasonable expectation of privacy while standing in the doorway of his home; consequently, the warrantless arrest of defendant Santana did not violate the fourth amendment. The court there reiterated that " '[w]hat a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection.' " (*United States v. Santana* (1976), 427 U.S. 38, 42, 49 L. Ed. 2d 300, 305, 96 S. Ct. 2406, 2409, quoting *Katz v. United States* (1967), 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511.) In this instance, there was no entry into defendant's home for the purpose of effecting his arrest, therefore

there was no violation of the *Payton* rule. Accordingly, defendant's warrantless arrest, based on probable cause, in a public place, was lawful.

The case of *United States v. Johnson* (9th Cir. 1980), 626 F.2d 753, is to be distinguished from the instant case. There, Johnson opened the door of his dwelling after the arresting agents misrepresented their identities, thus his initial exposure to the view and physical control of the agents was nonconsensual on his part. Moreover, the arresting agents brandished weapons prior to Johnson's invitation to them to enter. The court found these two factors controlling in determining that *Santana* and *Botero* were inapplicable, and ultimately that the warrantless arrest of Johnson in his doorway was the result of coercion and subterfuge and in violation of his fourth amendment rights. (626 F.2d 753, 757.) The circumstances of the instant case, however, do not parallel those found in *Johnson* and we find *Santana* controlling.

Defendant also contends that the trial court erred in admitting the testimony of Osama Rasik concerning her observation of defendant during the armed robbery at the 449 Food and Liquor Store during his trial for the armed robbery at the Busy Corner Pharmacy.

Evidence of other crimes committed by a defendant is inadmissible when it is independent of or disconnected from the crime with which he stands charged. (*People v. Cage* (1966), 34 Ill. 2d 530, 216 N.E.2d 805; *People v. Copeland* (1978), 66 Ill. App. 3d 556, 384 N.E.2d 391.) However, an exception is recognized when the evidence "fairly tends to place the defendant in proximity to the time and place of the offense charged, aids or establishes defendant's identity, tends to prove intent, knowledge, motive, a common scheme or design, or a fact material to the issue on trial." (*People v. Oliver* (1977), 50 Ill. App. 3d 665, 674, 365 N.E.2d 618, 625; see generally *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) The admission of such evidence, however, ultimately depends on balancing its probative value against its prejudicial effect, and the determination on this issue rests within the sound judicial discretion of the trial court. *People v. De La Fuente* (1981), 92 Ill. App. 3d 525, 414 N.E.2d 1355; *Copeland.*

■ We believe that Rasik's testimony was properly admitted. The evidence established that the two robberies occurred within approximately 10 minutes of one another at locations in close proximity. Rasik's description of the armed robbery and defendant's participation in it served to establish defendant's identity as the person who committed an almost identical crime within one block and 10 minutes later. Although the proximity of the two occurrences alone would not prove

this similarity (see, *e.g., People v. Spencer* (1972), 7 Ill. App. 3d 1017, 288 N.E.2d 612), the closeness of time and location of the two crimes together with the facts that the witnesses gave nearly identical descriptions of the armed robbers, that the perpetrator of the first robbery fled in the direction of the second, and that in both occurrences the robbers used a handgun, ordered that the money be placed in a bag, and made no effort to coneal themselves, sufficiently linked the one armed robbery with the other. (*Cf., People v. Copeland* (1978), 66 Ill. App. 3d 556, 384 N.E.2d 391.) The evidence was relevant to identify defendant as the armed robber of the pharmacy as charged. Moreover, the evidence was also relevant to rebut defendant's alibi testimony. But see *People v. Fuerback* (1966), 66 Ill. App. 2d 452, 214 N.E.2d 330, where details of another crime admitted solely to rebut defendant's alibi were deemed prejudicial.

Accordingly, in reviewing defendant's bench trial, we do not find the probative value of the evidence outweighed by its prejudicial effect.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.