THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CURTIS HALL, Defendant-Appellant.

First District (4th Division)   No. 1—86—3064

Opinion filed December 21, 1989.

Michael J. Pelletier and Thomas J. Long, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Kenneth T. McCurry, and Inez Toledo-Bargioni, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant, Curtis Hall, was convicted of aggravated criminal sexual assault (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14(a)(2)) and robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18—1) following a jury trial in the circuit court of Cook County. The trial judge sentenced defendant to the penitentiary for concurrent terms of 60 years on the aggravated criminal sexual assault conviction and 14 years on the robbery conviction.

On appeal, defendant contends that he was denied a fair trial due to the admission of irrelevant evidence. Defendant also contends that he was denied a fair trial because, during closing argument, the trial

judge expressed his opinion that the State had proved beyond a reasonable doubt defendant's guilt, and the prosecutor made improper and prejudicial remarks. Defendant lastly contends his extended-term sentence for robbery must be vacated.

We affirm, as modified.

BACKGROUND

The record contains the following pertinent facts. Defendant was charged in a 15-count indictment with various offenses relating to criminal sexual assault, robbery, and kidnapping. Prior to trial, the State entered a *nolle prosequi* on all but four counts. Defendant was tried to a jury on aggravated criminal sexual assault based on the victim's bodily harm, robbery, kidnapping, and aggravated criminal sexual assault based on kidnapping.

The State's evidence at trial is summarized as follows. On the afternoon of July 30, 1984, the victim, a 16-year-old girl, left her home to pick up a relative, her godparents' grandchild, at school. After she exited a bus near 120th Street and Racine Avenue, she began walking on a dirt road towards Racine Avenue. As she walked, she saw defendant appear approximately 20 feet in front of her.

As they neared each other, defendant crossed the victim's path. He then wrapped his arms around her neck, choking her and inflicting pain. When she attempted to escape, he tightened his grip so that she could not breathe. He dragged her backwards into a vacant lot. He pulled her through the lot and under a broken fence, and into an area of tall bushes and trees.

Defendant threw the victim to the ground. She screamed for her mother; defendant struck her forehead with his fist. Defendant then pulled the victim's pants down and forcibly subjected her to sexual intercourse. Defendant then sat next to the victim for approximately five minutes, took her pants off, again punched her face, and subjected her to sexual intercourse a second time. Defendant then took the victim's social security card, told her to "shut up" and "stay there," and then departed.

Seconds after defendant left, the victim got up and ran. She climbed over a barbed wire fence, sustaining injuries to her legs and hands. She found newspapers to cover the bottom half of her body. The victim ran to a nearby house where a woman assisted her and called the police and the victim's mother.

Police officers took the victim to Roseland Hospital, where she was met by her mother and other relatives. Her mother observed the victim's cuts and bruises. The victim gave Chicago police officer

Leroy Johnson a description of the defendant. The victim was then taken to a medical clinic at 111th and State Streets. There the treating physician noticed swelling around the victim's neck and bruises on her forehead. As part of the examination, the physician prepared a Vitullo kit, a medical test used in sexual assault investigations, which included samples taken from the victim's vagina.

A police criminologist examined the Vitullo kit, as well as blood and saliva samples from both the victim and defendant. Semen was present in the samples. The criminologist concluded essentially that she could not specifically identify the semen as defendant's. However, she also concluded that the test did not exclude defendant as the source of the semen. She stated that the test results were consistent with defendant being the source of the semen.

The victim subsequently identified defendant's photograph and swore out a criminal complaint. Defendant was arrested on September 16, 1984. A lineup was held the next day; the victim identified defendant.

Defendant's case consisted of an examination of Officer Johnson, to impeach his testimony regarding defendant's description.

The jury convicted defendant of aggravated criminal sexual assault based on the victim's bodily harm, and robbery. The jury acquitted defendant of kidnapping and aggravated criminal sexual assault based on kidnapping.

At the sentencing hearing, the trial judge denied defendant's post-trial motion. At the close of the hearing, the trial judge sentenced defendant to the penitentiary for a term of 60 years on the aggravated criminal sexual assault conviction, and an extended term of 14 years on the robbery conviction, the sentences to run concurrently. Defendant appeals.

OPINION

I

Defendant contends that he was denied a fair trial due to the admission of irrelevant evidence. He claims that the results of the blood and enzyme tests were irrelevant to whether he committed the offense.

The general test for the admissibility of evidence is its relevance. Evidence is admissible where it fairly tends to prove the particular offense charged. Any circumstances which tend to make the proposition at issue more or less probable may be put into evidence. Evidence is therefore relevant where the fact or circumstance offered

tends to prove or disprove a disputed fact or to render the matter at issue more or less probable. Relevance can also be established by means of inference. *People v. Jones* (1982), 108 Ill. App. 3d 880, 884-85, 439 N.E.2d 1011, 1015-16.

■ The determination of whether evidence is relevant rests in the discretion of the trial court. The trial court's decision will not be disturbed on review absent an abuse of discretion to the prejudice of defendant. Even where there is error, if the evidence of guilt is overwhelming, *i.e.*, it is so convincing that the jury would have convicted even if the irrelevant evidence had been excluded, reversal is not required. *Jones*, 108 Ill. App. 3d at 884, 439 N.E.2d at 1015.

As we mentioned earlier, the blood and enzyme tests could not identify defendant as the particular source of the semen. Rather, all that the test could do, statistically, was place defendant in a large group of possible sources of the semen, between 40% and 60% of the black male population. Defendant argues that his membership in such a large category of possible offenders is not relevant to whether he committed the offense. Thus, defendant concludes that the criminologist's testimony that the test results were consistent with defendant being the offender were irrelevant and prejudicial.

■ We disagree. "This court and others have recognized heretofore that evidence of hair, blood, and semen found at the scene of the crime may be admitted, with appropriate foundation, even though its probative value may not be considerable." (*People v. Johnson* (1976), 37 Ill. App. 3d 328, 332, 345 N.E.2d 531, 535 (and cases cited therein).) The evidence in the case at bar was relevant insofar as it tended to exclude other persons and failed to exclude defendant as a possible offender. (See *Johnson*, 37 Ill. App. 3d at 332, 345 N.E.2d at 534.) Here, as in *People v. Wright* (1989), 186 Ill. App. 3d 159, 542 N.E.2d 367, the victim's identification of defendant, with the other corroborating evidence, "served to define the group of possible assailants (one), and the tests supported the identification by showing that he could not be ruled out. Thus, the blood group tests were admissible." *Wright*, 186 Ill. App. 3d at 165, 542 N.E.2d at 371.

■ As our supreme court noted in *People v. Free* (1983), 94 Ill. 2d 378, 416, 447 N.E.2d 218, 236, "[w]e must not confuse the distinction between the admissibility of evidence and its probative value." In the case at bar, defendant was entitled to argue to the jury the lack of any connection between him and the semen. He could have stressed the weak probative value of the test results, but he could not have barred their admission. (See *Free*, 94 Ill. 2d at 417, 447 N.E.2d at 237.) We hold that the trial court did not abuse its discretion in ad-

mitting into evidence the blood and enzyme test results, and the criminologist's opinion based on those results.

## II

Defendant contends he was denied a fair trial also because, during closing argument, the trial judge expressed his opinion that the State had proved beyond a reasonable doubt defendant's guilt.

■■ Defendant misreads the record. In a supplemental record, a court reporter certified as follows:

> "I reported in shorthand the proceedings had in the above entitled cause; that page 373 [page 458 of the record on appeal] has been corrected from 'Not every piece of evidence has been proved beyond a reasonable doubt, certainly every piece *has been proved* beyond a reasonable doubt.' To, 'Not every piece of evidence has been proved beyond a reasonable doubt, certainly every piece *has to be proved* beyond a reasonable doubt.' which I hereby certify is a true and correct transcript of the proceedings ***." (Emphasis added.)

We hold that the trial judge's comments did not deny defendant a fair trial.

## III

■■ ■ Defendant contends he was denied a fair trial also because the prosecutor made improper and prejudicial remarks during closing argument. He cites four instances of this alleged misconduct. A prosecutor has great latitude in presenting his or her closing argument. A reviewing court is reluctant to set aside a verdict based on remarks made during closing argument and does so only where the remarks are clearly prejudicial. In determining whether the remarks are prejudicial, a court must refer to the content of the language used, its relation to the evidence, and the effect of the argument on the rights of the accused to a fair and impartial trial. (*People v. Franklin* (1976), 42 Ill. App. 3d 408, 421, 355 N.E.2d 634, 645.) Also, the trial court is in a better position than a reviewing court to determine the prejudicial effect of a remark made during closing argument. Absent a clear abuse of discretion, its ruling should be upheld. *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324, 327.

## A

■ Defendant claims that the following remark by the prosecutor during closing argument was improper and prejudicial:

> "Now ladies and gentlemen, the word reasonable doubt, has

come up during the course of this trial. And I want you to understand something. We are not under an obligation to prove every piece of evidence that you heard from that stand, the testimony, beyond any reasonable doubt."

The trial judge sustained defendant's objection and instructed the jury with the remark discussed in Part II of this opinion. Thus the error, if any, was cured. See *People v. Lloyd* (1981), 93 Ill. App. 3d 1018, 1025, 418 N.E.2d 131, 136.

## B

Defendant claims that the prosecutor made "personal attacks on the integrity and tactics of defense counsel" and, therefore, were beyond the scope of proper argument. During his closing rebuttal argument, the prosecutor urged the jury not to allow defense counsel to put a "guilt trip" on them to obtain an acquittal.

The record shows that defense counsel invited these remarks. Defense counsel exhorted the jury not to judge defendant harshly. He even invoked the ancient admonition "Judge not [lest] ye be judged." Since defense counsel invited the prosecutor's remark, defendant cannot now rely on the statement as error. See *People v. Vriner* (1978), 74 Ill. 2d 329, 344, 385 N.E.2d 671, 677.

## C

The prosecutor also argued that one reason why the victim's identification of defendant was accurate was because his "face would be the last face she might ever see on this earth." Defendant argues that this statement was not based on the evidence.

We disagree. It is quite settled that "a prosecutor may reflect unfavorably upon an accused and indulge in invective in urging the fearless administration of the law, based upon the evidence and legitimate inferences drawn from it." (*People v. Hovanec* (1979), 76 Ill. App. 3d 401, 424, 394 N.E.2d 1340, 1356.) In the case at bar, the defendant literally snatched the victim from the street, choked her and treated her violently, and struck her twice. After reviewing the record, we conclude that the complained-of remark was a legitimate inference drawn from the evidence.

## D

Defendant assigns error to the following statement: "Pam Fish [the police criminologist] said that the enzymes are consistent with what you could expect to find if [defendant] had raped [the victim]." Defendant claims that this remark was not based on the evidence.

■■■ We disagree. The criminologist did testify that the blood and enzyme test results were consistent with defendant being the source of the semen found in the victim. That the semen might have come from another source did not preclude the argument that it came from defendant. The State was not prevented from arguing and drawing the inference which connected the victim with defendant. (See *People v. Smith* (1974), 19 Ill. App. 3d 138, 145, 310 N.E.2d 818, 823.) We hold that none of the prosecutor's remarks, considered individually or cumulatively, denied defendant a fair trial.

## IV

■■■ Defendant lastly contends that his extended-term sentence of 14 years on the robbery conviction must be vacated. The State concedes error. (See *People v. Jordan* (1984), 103 Ill. 2d 192, 203-06, 469 N.E.2d 569, 574-75.) Robbery is a Class 2 felony. (Ill. Rev. Stat. 1983, ch. 38, par. 18—1(b).) The prescribed sentence for a Class 2 felony is a prison term of not less than three years and not more than seven years. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(5).) We reduce defendant's sentence on the robbery conviction from 14 years to 7 years. 107 Ill. 2d R. 615(b).

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as modified by this opinion.

Affirmed, as modified.

JIGANTI, P.J., and McMORROW, J., concur.